# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-472

**WILBERT JOSEPH LEVIER AND ROSE RICHARD LEVIER**

**VERSUS**

**JEFF DAVIS BANCSHARES, INC.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 16-C-3007-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED.**

**Steven J. Diebold**
**Diebold Law Firm, LLC**
**Post Office Box 51836**
**Lafayette, Louisiana 70505**
**(337) 347-6640**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **Wilbert Joseph Levier**
     **Rose Richard Levier**

**Stephen C. Polito**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**Post Office Box 2900**
**Lake Charles, Louisiana 70602-2900**
**(337) 436-9491**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Jeff Davis Bancshares, Inc.**

**SAVOIE, Judge.**

In this case concerning the amendment of building restrictions, the trial court granted a motion for summary judgment filed by Defendant Jeff Davis Bancshares, Inc. (JD Bank), affirming the amendment to the restrictions at issue. Plaintiffs, Wilbert Joseph Levier and Rose Richard Levier, now appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 3, 1949, Edward Patterson Smiley transferred ownership of a lot in the Smiley Subdivision to Otis Burton Stander. In the act which transferred ownership, the building restrictions for the Smiley Subdivision were formed. In the 1949 Restrictions, Smiley established general and special restrictions for all lots in the Smiley Subdivision, including a prohibition on commercial use. The restrictions also allow for amendment, in whole or in part, by a "vote of the majority of the owners of the lots in the subdivision."

Lots 13, 14, and 15 of Block F of the Smiley Subdivision are located on South Union Street. They are zoned by the City of Opelousas as a Neighborhood Mixed Use District. This type of zoning allows for commercial uses, including banks and financial institutions.

On May 9, 2016, James Maddock McCarthy, M.D. and the Joan Sybil Leblanc McCarthy Credit Shelter Trust (sellers) executed a purchase agreement with JD Bank, wherein JD Bank agreed to buy Lots 13, 14 and 15 of Block F of the Smiley Subdivision from the sellers. JD Bank planned to build a new bank branch on the lots. Before the purchase could be finalized, however, JD Bank needed to confirm that the zoning and building restrictions affecting the property allowed for the construction of the branch building.

JD Bank needed zoning approval for its signage and drive-through, which was obtained at an Opelousas City Council meeting on April 12, 2016. The last step in the process was to amend the 1949 Building Restrictions to allow for commercial use of the three lots in the Smiley Subdivision. To that end, Tina Vidrine, a JD Bank employee, went door to door to lot owners in the subdivision with a written document. She explained the proposed amendment, and the lot owners had a choice to either reject the amendment or sign the agreement as evidence of their approval. There are seventy-seven lots in Smiley Subdivision. The agreement and vote of the owners of 38.5 of the lots were required for an amendment of the restrictions to be valid. Vidrine ultimately acquired forty-one signatures. This document, with the signatures, was then duly acknowledged and filed in the St. Landry Parish Clerk of Court's Conveyance Records.

JD Bank, having received zoning approval and amendment of the 1949 Restrictions, purchased the lots at issue. On July 13, 2016, the Leviers, lot owners in Smiley Subdivision, filed a Petition for Declaratory Judgment and For Injunction against JD Bank, alleging that the amendment to the 1949 Restrictions was not valid. JD Bank subsequently filed a motion for summary judgment arguing that the amendment constitutes a "vote" by the majority of the lot owners as required to amend the building restrictions. After a hearing on the motion, the trial court ruled in favor of JD Bank, finding:

> [T]hat the Amendment to Restrictions recorded on April 1, 2016, in the St. Landry Parish Clerk of Court's Conveyance Records, bearing Act. No. 1139450, constituted a vote as required by the Smiley Subdvision [sic] Building Restrictions created by the Mortgage Sale from Edward Patterson Smiley to Otis Burton Stander executed on December 3, 1949, and recorded in St. Landry Parish Clerk of Court's Conveyance Records, Book F-9, Page 43, Act No. 276728, and that, because a vote occurred with a majority of the owners of the lots voting in favor of the said amendment, the Amendment to Restrictions

2

recorded on April 1, 2016, in St. Landry Parish Clerk of Court Conveyance Records, bearing Act. No. 1139450, validly amended the Smiley Subdivision Building Restrictions to allow commercial development on Lots 13, 14, and 15 of Block F of the Smiley Subdivision.

The Leviers now appeal.

## ASSIGNMENTS OF ERROR

The Leviers contend that:

1) The [trial court] committed reversible error in finding that the Amendment to Restrictions instrument recorded under Act. No. 1139450 constituted a vote as required by the Smiley Subdivision Building Restrictions.

2) The [trial court] committed reversible error in finding that the Amendment to Restrictions validly amended the Smiley Subdivision Building Restrictions to allow commercial development of Lots 13, 14, and 15 of Block F of the Smiley Subdivision.

3) The [trial court] committed reversible error in granting summary judgment and dismissing the Leviers' case.

## LAW AND DISCUSSION

The appellate standard of review for motions for summary judgment is set forth as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.,* 2006-363[,] p. 3 (La.11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. A summary judgment is reviewed on appeal *de novo,* with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light,* 2006-1181[,] p. 17 (La.3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank,* 2004-0337[,] p. 7 (La.10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago,* 2003-1424[,] p. 5 (La.4/14/04), 870 So.2d 1002, 1006.

*Samaha v. Rau,* 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote

omitted).

Louisiana Civil Code Article 780 (emphasis added) provides:

Building restrictions may be amended, whether such amendment
lessens or increases a restriction, or may terminate or be terminated,
**as provided in the act that establishes them**. In the absence of such
provision, building restrictions may be amended or terminated for the
whole or a part of the restricted area by agreement of owners
representing more than one-half of the land area affected by the
restrictions, excluding streets and street rights-of-way, if the
restrictions have been in effect for at least fifteen years, or by
agreement of both owners representing two-thirds of the land area
affected and two-thirds of the owners of the land affected by the
restrictions, excluding streets and street rights-of-way, if the
restrictions have been in effect for more than ten years.

In the present case, the act that established the 1949 Restrictions does

include a provision for amendment of the restrictions. General Restrictions

Section 15 (emphasis added) states:

The General Restrictions herein contained shall be binding on
all purchasers, their heirs or assigns, and on all persons claiming
under all purchasers, their heirs or assigns, and any special restrictions
that may be set forth in any deed to any lot or parcel of ground in said
subdivision, shall be binding on the particular purchasers, their heirs
or assigns, and on all persons claiming under them, until January 1,
1975, at which time said restrictions shall be automatically extended
for successive periods of ten years, **unless by a vote of the majority
of the owners of the lots in said subdivision it should be agreed to
change the said restrictions in whole or in part.**

The building restrictions do not contain a section explaining what constitutes

a vote or how the vote is to be conducted. It is the Leviers' contention that a vote

to amend the restrictions did not take place. The Leviers argue that the "generally

prevailing meaning of the word 'vote' minimally requires some kind of a proposal

put before all potential voters and a specific timeframe in which the vote will

occur." That was not done in this case. We disagree.

4

"The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047. In that regard, we turn to the general and ordinary meaning of the word "vote" which is a "formal expression of opinion or will in response to a proposed decision" and/or "an indication of approval or disapproval of a proposal." *Merriam-Webster's Collegiate Dictionary*, 1403 (11th ed. 2004). The amendment document signed by the lot owner states, "that [she/he] does hereby approve the Amendment to Restrictions to permit Lots 13, 14 and 15 of Block F to be used for commercial purposes." We find this language to be unambiguous. Signing of the document clearly expresses approval of a proposal, which is the amendment of the building restrictions.

In addition, we find no authority that requires notice or a hearing on the matter. The drafters of the 1949 Building Restrictions could have included such language in the document, but they did not. Such requirements cannot now be read into the restrictions. We do not find that notice and hearing requirements attach with the addition of the word "vote."

Further, JD Bank attached the affidavit of Bruce Gaudin, a title attorney doing business in St. Landry Parish, Lafayette and Evangeline Parishes. He drafted the agreement to amend the subdivision restriction, and he avers "[t]hat using written agreements to amend building restrictions and recording said written agreement, as was done in this case with the 2016 Amendment, is the standard real estate practice in St. Landry Parish and the surrounding areas."

For these reasons, we find that the written document signed by the lot owners constituted an amendment of the 1949 Building Restrictions, permitting Lots 13, 14 and 15 of Block F of the Smiley Subdivision to be used for commercial purposes. The Leviers' assignments of error are without merit.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed.  All costs associated with this appeal are assessed to Plaintiffs Wilbert and Rose Levier.

**AFFIRMED.**